UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    PLAINTIFF,

  V.                                           CASE NO. 6:23-MJ-2348

GEORGE DOUGLAS METZ,

    DEFENDANT.
_____/

MOTION TO RENEW DEFENSE MOTION FOR
JUDGEMENT OF ACQUITTAL AND CLOSING ARGUMENTS

    Defendant George Douglas Metz, by and through his undersigned attorney hereby submits to this Honorable Court his renewed motion for judgment of acquittal, as well as his closing argument in the case, specifically addressing the three questions that this court has asked the parties to address.

PROCEDURAL HISTORY

    George Metz was formally charged, by way of Criminal Information, with six offenses, on November 28, 2023. Doc. 1. Counts Three, Five and Seven allege that Mr. Metz failed to comply with official signs of a prohibitory, regulatory, and directory nature and with the lawful direction

of Federal police officers and other authorized individuals, in violation of 41 C.F.R. § 102-74. 385.[1]

Counts Four, Six and Eight allege that Mr. Metz did enter in and on Federal property and did unlawfully take photographs, including video recordings, (a) in violation of security regulations, rules, orders, and directives, and (b) of space occupied by a tenant agency without the permission of the occupying agency, in violation of 41 C.F.R. § 102-74.420.

Metz had his initial appearance on December 13, 2023. Doc. 10. On the same date the court held an arraignment and Metz entered a plea of not guilty to all of the charges. Doc. 10. The trial in the above case commenced before this Honorable Court on May 17, 2024 and was concluded the following day. At the conclusion of the government's case, Metz moved for a judgment of acquittal. Doc. 62, pgs. 21-25. This Court deferred ruling on said motion. Doc. 62, pg. 25. The Court ordered the parties to submit their closing arguments in writing by July 12, 2024. Doc. 59. The Court also directed the parties to address the following three questions: (1) What authority does Social Security have to limit videography when the CFR only

---

[1] The charge in Count three does not allege that Metz failed to comply "…with the lawful direction of Federal Police Officers and other authorized individuals."

2

mentions photography? (2) What are the Regulations on space occupied by a Tenant Agency versus Subsection (c), about Building Entrances, Lobbies, Foyers, Corridors, Auditoriums? (3) What is the policy concerning photographs for news, advertising or commercial purposes?

### RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

At the conclusion of the government's case, the defense moved for a judgment of acquittal as to all counts. Doc. 62, Volume II, pgs. 21-25. The court reserved ruling on said motion. Doc. 62, pg. 25. Two of the issues that Metz argued in his *ore tenus* judgment of acquittal motion dealt with the issue of identity and the issue of venue.

When considering a motion for judgment of acquittal, the evidence is viewed in the light most favorable to the prosecution and all reasonable inferences and credibility, choices are resolved in favor of the government. *See United States v. Fleury*, 20 F.4th 1353, 1367 (11th Cir. 2021); *United States v. White*, 663 F.3d 1207, 1213 (11th Cir. 2011).

During its case in chief, the Government called four witnesses (Luis Flores, Doc. 61, Volume I, pgs. 8-84; Pierre Suarez, Doc. 61, Volume I, pgs. 85-122; Kimberly Davenport, Doc. 61, Volume I, pgs. 122-141; Fareez Mohammed, Doc. 61, Volume I, pg. 141).

3

The Government did not ask any of these witnesses to identify Metz in the courtroom as the person who had committed the acts alleged in the Criminal Information in Counts three through eight.  Consequently, the government failed to establish that Metz was the person who committed the acts alleged in Counts three through eight.  Likewise, the government did not ask any of the above witnesses if the crimes alleged in the Information had occurred in the Middle District of Florida.  The Eleventh Circuit Court of Appeals has held that venue is an essential element in a criminal case and should not be treated as a mere technicality.  *United States v Snipes*, 611 F.3d 855, 865 (11th Cir. 2010).  It is guaranteed by the Constitution and a question of fact for the jury.  *Id* at 866.  Because the government did not establish, through testimony, that the alleged criminal acts in Counts three through eight were not in the Middle District of Florida, the government did not properly establish venue in the instant case.  Accordingly, the Court should grant a Judgment of Acquittal as to all counts.

The undersigned additionally renews his motion for Judgment of Acquittal, as to Counts three through eight, in that the government did not present sufficient evidence to support a guilty verdict.

## WHAT IS THE AUTHORITY FOR INCLUDING VIDEOS WITHIN 41 CFR 102-74.420?

While the GSA regulation uses only the term "photograph", it is clear from the March 30, 2018 *Operational Readiness Order HQ-ORO-002-2018*, (Gray Exhibit 2), that the Department of Homeland Security Federal Protective Service interprets the regulation to include videotaping:

> To address this increase in photography and videotaping by the public, the Operational Readiness Order reiterates the 2010 guidance; provides clarification on the public's right to photograph publicly accessible federal facility building entrances, lobbies, foyers, corridors and auditoriums; and directs FPS law enforcement personnel and PSOs to maintain security without adversely impacting *the public's rights relating to photograph and videotaping*.

(Gray Exhibit 2, page 1.)  Further, at Gray Exhibit 2, page 2:

(U//FOUO//LES) In applying this regulation to FPS protected federal facilities, FPS law enforcement personnel and PSOs should consider the following information when contemplating enforcement of the regulation.

| REGULATION | APPLICATION |
|---|---|
| "Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of…" | Photography and videotaping the interior of federal facilities is allowed under the conditions set forth in (a) – (c) of the regulation unless there are regulations, rules, orders, directives or a court order that prohibit it. |

## WHAT ARE THE REGULATIONS ON SPACE OCCUPIED BY A TENANT AGENCY VERSUS SUBSECTION (C), ABOUT BUILDING ENTRANCES, LOBBIES, FOYERS, CORRIDORS, AUDITORIUMS?

There is no dispute that the lobby of the Social Security Field Offices is open to the general public.  Luis Flores, who was an Assistant District

Manager of the Orlando SSFO in January 2023, testified that "just about anyone and everyone" was allowed into the Social Security Field Offices. (Flores, Tr. Vol I, 11:2-4), that the Social Security Office is open to the public (Vol I, 48:9-12), and that Mr. Metz, as a member of the general public, not only had a right to be there, but agreed that Mr. Metz had been given permission to videotape:

> Q  Mr. Flores, you indicated in your direct examination that the types of people – or you discussed the types of people that come into the Social Security office.
>     Do you remember that?
> A  Yes.
> Q  In truth of fact, any citizen can go into the Social Security office?
> A  Citizen or not, any person can come to an office.
> Q  They have a right to be there?
> A  Yes.
> Q  And in this instance, there were two individuals that came into the Social Security office that you've been discussing?
> A  Yes.
> Q  And they had a right to be there?
> A  Yes.
> Q  During various times while they were in the building, when they were having conversations with the security guards, they were told that it was okay if they filmed. They just couldn't go in the private areas.
>     Correct?
> A  What – excuse me.
>     I do remember them saying that in the video.
> Q  Yes. In one instance the guard said, as long as there is no sensitive information, it is fine to record.
>     Do you remember that?
> A  I do remember them saying that.

6

(Vol. I, 69:9-70:10).

41 CFR 102-74.375 states that federal agencies must restrict admission to authorized individuals only:

Federal agencies must –

(c) When property or a portion thereof is closed to the public, restrict admission to the property, or the affected portion, to authorized persons who must register upon entry to the property and must, when requested, display Government or other identifying credentials to the Federal police officers or other authorized individuals when entering, leaving or while on the property.  Failure to comply with any of the applicable provisions is a violation of these regulations.

The Government presented no evidence at trial, such as a lease, a GSA leasing expert, or schematic of tenant occupation defining the lobby area space.

## WHAT DEFINES "NEWS PURPOSES"?

41 CFR 102-74.420 is written in "plain language" style.  See 41 CFR 102-2.140.  "Plain language" writing is that which is "plain" and conveys the intended meaning in a way that the intended audience can easily understand.  Certain words and phrases are defined at 41 CFR 102-71.20; "news purposes" is not one of them. The writers depend on the reader to read the plain meaning of the words.

7

45 CFR 1602.2, Procedures for Disclosure of Information Under the Freedom of Information Act, at (k) defines a representative of the news media as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." It goes on to say, "In this clause, "news" means information that is about current events or that would be of current interest to the public." The plain meaning of the word "Purposes'" is "what something is used for, function, role, use." [2]

Therefore, the phrase "news purposes," as written in 41 CFR 102-74.420(c) and read in plain-language style, means members of the news media are allowed to photograph (video record) in "Building entrances, lobbies, foyers, corridors, or auditoriums" that which is deemed to be of potential interest to a segment of the public, and use the distinct work created to distribute to the public.

Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting "the free discussion of governmental

---

[2] https://www.vocabulary.com/dictionary/purpose

8

affairs." *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). Moreover, as the Court has noted, "[f]reedom of expression has particular significance with respect to government because '[i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression.' " *First Nat'l Bank*, 435 U.S. at 777 n. 11, 98 S.Ct. 1407 (alteration in original) (quoting Thomas Emerson, Toward a General Theory of the First Amendment 9 (1966)). This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties. *Cf. Gentile v. State Bar* of Nev., 501 U.S. 1030, 1035–36, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (observing that "[t]he public has an interest in [the] responsible exercise" of the discretion granted police and prosecutors). Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, see id. at 1034–35, 111 S.Ct. 2720 (recognizing a core First Amendment interest in "the dissemination of information relating to alleged governmental misconduct"), but also may have a salutary effect on the functioning of government more generally, *see Press–Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (noting that "many governmental processes operate best under public scrutiny.")

9

As a First Amendment Auditor ["Auditor"], George Metz III disseminates his videos through the YouTube channel "Rogue Nation". Auditors believe their work promotes transparency and open government and serves to educate the public about freedom of speech and freedom of the press under the First Amendment. Mr. Metz is one of many Auditors throughout the country, a movement that can trace its roots back to the 1991 beating of Rodney King, when a citizen with a new camcorder went to his balcony and filmed the famous footage of King's beating by four Los Angeles County police officers.[3]

Mr. Metz's newsgathering is a protected right under the First Amendment. This protection emanates from strong public policy supporting the unfettered communication of information by the journalist to the public. Whether a person is a journalist must be determined by the person's intent at the inception of the information-gathering process, and whether he is involved in activities traditionally associated with the gathering and dissemination of news, even though he may not be a member

---

[3] League of California Cities, *What to do when First Amendment Auditors Come to Town*, May 19, 2023

of the institutionalized press. See *von Bulow v. von Bulow*, 811 F.2d 136, 142 (2nd Cir. 1987).

The U.S. Supreme Court has recognized a "paramount public interest in a free flow of information to the people concerning public officials." *See Glik v. Cuniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of government affairs."); *see also W. Watersheds Project v. Michael*, 869 F.3d 1189, 1197 (10th Cir. 2017) ("We agree with the Seventh Circuit that 'the First Amendment provides at least some degree of protection for gathering news and information, particularly news and information about the affairs of government.") (citing *Am.C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012.) ("The act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording. The right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of *making* the recording is wholly unprotected, as the State's Attorney insists. By way of a simple analogy,

11

banning photography or note-taking at a public event would raise serious First Amendment concerns; a law of that sort would obviously affect the right to publish the resulting photograph or disseminate a report derived from the notes. The same is true of a ban on audio and audiovisual recording.") *Id.* at 595.

Here, the regulation at issue is *GSA Rules and Regulations*, 41 CFR § 102-74.420, as posted at Social Security Field Offices:

> Photographs for News, Advertising, or Commercial Purposes (41 CFR 102-74.420). Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of:
>
> (a)   Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;
>
> (b)   Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
>
> (c)   Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

The Government contends that there is a Social Security policy that prohibits all photography and videotaping without permission, in

12

contradiction to the plain language of 41 CFR 102-74.420(c), and presents SSA POMS GN 03360.010 as that policy (Government Exhibit 10):

> GN 03360.010 – Taping Interviews in Field Offices – Policy
>
> A person may audio record his or her telephone or in-person contact or interview with SSA personnel. Employees should not, however, suggest or encourage the use of recording devices. An audio recording played by a person or his or her representative does not constitute a disclosure by SSA. Therefore, a signed release of any kind is not required. Photography and video recording are prohibited in Federal space without the permission of the tenant agency (41 U.S.C. § 102-74.420.) Refer questions to the Center for Security and Integrity in your region.

GN 03360.010 misstates the regulation. Regardless as to assigned space, the regulation cited within the policy requires no permission for "news purposes." Further, GN 03360.010 is not posted at any of the Social Security Field Offices at issue, and none of the Protective Security Officers ["PSO"] testified that they knew about the policy. The result is PSOs inconsistently performing their duties and confusion in the general public about what is permitted. The regulation and hidden policy give with one hand and take with another, all while the public is blindfolded.

Any speech restriction should be written in a way that is capable of being clearly understood and consistently applied by the government employees enforcing it. The contradiction of the un-posted policy, a

13

restriction, with the regulation that allows videotaping under certain circumstances, gives significant discretion to PSOs to interpret where, when, and how to stop someone from filming, and has led to misinterpretation and inconsistent application. Application of a restriction in a viewpoint-discriminatory manner is prohibited in all forums.

When directed to stop filming, PSO's focus on the introductory paragraph of the regulation, "Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it…" When asked to see the Social Security policy, PSO's point to uncited posters or posters that cite 41 CFR § 102-74.420.

Adding to the confusion, the public is given contradictory directions from the PSOs. Mr. Metz was never asked to stop filming at the Ocala office. In Orlando, PSO Suarez gave permission to film no fewer than five times, indicating "keep doing what you're doing," and as long as they are not in sensitive areas everything is fine. (Govt. Exhibit 5A, 7:36, 8:46, 12:02, 12:25, 15:25).

When reading the plain language of the regulation, PSO Davenport agrees that video recording can take place in Social Security offices:

Q    So just to be clear, Subsection (c) is where you can record?

14

A    Sorry. I didn't know you were asking me a question. It says you can for news purposes within those areas of a federal building in Subsection (c). (Vol I, 136:16-20).

Federal Protective Services' ["FPS"] own Operational Readiness Order recognizes the potential for confusion. Government's Exhibit 11, at 3, requires "The prohibition must be clearly posted or actual (in-person) notice must be given in order to be enforced." The adverb "clearly," defined as "in a way that is easy to read, see, hear, or understand"[4] modifies both "posted" and "actual (in-person)."

In *Minnesota Voters Alliance v. Mansky,* 138 S.Ct. 1876, 1888-92 (2018), the Supreme Court ruled that a state's ban on political apparel in polling places violated the First Amendment because the word "political" was too vague and confusing for the law to be clearly and consistently applied. The Court found that while the law's objective (preventing voter intimidation, confusion, and disorder) was reasonable, the law's approach to the problem did not provide "objective, workable standards." *Id.* at 1891. In making its decision, the Court noted that while "reasonableness" is a "forgiving test," the government "must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." Id. at

---

[4] https://dictionary.cambridge.org/us/dictionary/english/clearly

1888 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 808-09 (1985)). Further, "Criminal offenses must be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Orona*, 724 F.3d 1297, 1310 (10th Cir. 2013). When challenging a regulation for vagueness, the relevant question in void for vagueness challenges is merely whether the defendant before us "had fair notice from the language" of the law "that the particular conduct which he engaged in was punishable." *Parker v. Levy*, 417 U.S. 733, 755, 94 S. Ct. 2547, 41 L. Ed. 2nd 439 (1974); see also *United States v. Franklin-El*, 554 F.3d 903, 910-11 (10th Cir. 2009).

### ADOPTION OF CO-DEFENDANT ARGUMENTS

Finally, Mr. Metz adopts any and all legal arguments made by his co-defendant, Joshua Joseph Gray, in his closing brief filed today at docket entry 66.

>A. Fitzgerald Hall, Esq.
>Federal Defender, MDFL
>
>*/s/James T. Skuthan*
>James T. Skuthan, Esq.
>First Assistant Federal Defender
>Florida Bar No. 0544124
>201 South Orange Ave, Ste. 300
>Orlando, FL 32801
>Tel: 407-648-6338
>Fax: 407-648-6095
>E-Mail: jim_skuthan@fd.org

## CERTIFICATE OF SERVICE

I Hereby Certify that undersigned electronically filed the foregoing *Motion to Renew Defense Motion for Judgement of Acquittal and Closing Arguments* with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to the following: Matthew Del Mastro, Assistant United States Attorney and co-defendant, Joshua Joseph Gray, this the 12th day of July 2024.

>*/s/James T. Skuthan*
>Attorney for Mr. Metz

17