1

2          IN THE UNITED STATES DISTRICT COURT FOR THE
                WESTERN DISTRICT OF MISSOURI
3                    WESTERN DIVISION

4

UNITED STATES OF AMERICA,        ) Case No. 23-00164-01-CR-W-DGK
5                                ) Citation No. 9731780
              Plaintiff,         ) Kansas City, Missouri
6                                ) July 18, 2023
v.                               )
7                                )
JERRY H. STAMPS,                 )
8                                )
              Defendant.         )
9    _____   )

10

                    TRANSCRIPT OF COURT'S RULING
11             BEFORE THE HONORABLE SARAH W. HAYS
                UNITED STATES MAGISTRATE JUDGE

12

13   APPEARANCES:

14   For the Plaintiff:        Mr. Nicholas P. Heberle
                               Assistant United States Attorney
15                             400 East Ninth Street, Fifth Fl.
                               Kansas City, MO  64106
16                             (816) 426-3122

17   For the Defendant:        Mr. Mark Q. Moore
                               400 Chesterfield Center, Ste. 400
18                             Chesterfield, MO  63017
                               (636) 537-7728
19
     Court Audio Operator:     Ms. Sara Borneman
20
     Transcribed by:           Rapid Transcript
21                             Lissa C. Whittaker
                               1001 West 65th Street
22                             Kansas City, MO  64113
                               (816) 914-3613
23

24

     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.

2

1    (Court in Session at 11:04 a.m.)

2         THE COURT:  All right.  Good morning.  Oh, be seated.

3    All right.  I've had a few technical glitches this morning so

4    we're a few minutes late getting started, but hopefully that will

5    not be a problem.  So, we are -- all right.  We are back on the

6    record in the case of *United States vs. Jerry Stamps*.  And it's

7    Citation No. 9731780.  If counsel would state their appearance

8    for the record.

9         MR. HEBERLE:  Good morning, Your Honor.  Nick Heberle

10   for the United States.

11        MR. MOORE:  Good morning.  Mark Moore for Defendant who

12   appears in person.

13        THE COURT:  All right.  So, we were here on June 2nd and

14   the -- on the petty offense docket, and there was a trial, but

15   the only evidence offered was the video, the YouTube video, which

16   I've looked at numerous times.  And no other evidence was

17   offered.  We had argument and then we had supplemental briefing.

18   So, I think I understand the position of the parties.  And I

19   don't really feel like anything further is necessary this

20   morning, but certainly I just wanted to make sure that no one had

21   anything else they wanted to add on the record.

22        MR. HEBERLE:  Nothing further for the United States.

23        MR. MOORE:  Nothing further for the defense.

24        THE COURT:  All right.  So, rather than issuing a

25   written decision, it seemed like it would be easiest today to

3

come back to court and just to let the Court kind of on the
record indicate what my views are based on the briefings of the
parties.  And just so we're clear, the ticket in question was for
taking photos through videotaping in violation of CFR 102-74.420.
And as I've mentioned, the only evidence offered was the video
taken by Mr. Stamps that he then posted on YouTube.  No witnesses
were offered.  No factual stipulations were offered.  And there
were trial briefs ahead of time, but because, at the conclusion
of offering that evidence, Mr. Stamps raised First Amendment
constitutional issues, the Court wanted to take the matter under
advisement, and the parties have now filed supplemental briefing
on Mr. Stamps' claim of a First Amendment right to a video at the
Social Security Administration Office.

            The Court views that it first needs to address the issue
of whether Mr. Stamps violated the regulation in question,
because if there's no violation, then we don't really get to the
First Amendment issue in the Court's view.  And then if the Court
finds a violation, we'll talk about the First Amendment issue.  I
know the parties have copies of the regulation at issue, but just
for the record, the regulation at issue says, "Except where
security regulations, rules, orders, or directives apply or a
federal court order or rule prohibits it, persons entering in or
on Federal property may take photographs of (a) Space occupied by
a tenant agency for non-commercial purposes only with the
permission of the occupying agency concerned; (b) Space occupied

4

1  by a tenant agency for commercial purposes only with written

2  permission of an authorized official of the occupying agency

3  concerned; and, (c) Building entrances, lobbies, foyers,

4  corridors, or auditoriums for news purposes."

5          Now, I should note that references made elsewhere, I

6  believe in that Operations Readiness order that was submitted by

7  Mr. Stamps' counsel to the fact that the Social Security

8  Administration has its own rules on photography, but no one

9  offered those rules.  And so, if there are any, they're not

10 before the Court and really not at issue in this matter since the

11 Defendant wasn't charged with violating those rules, only the CFR

12 at issue.  The parties do disagree on what section of this

13 regulation is at issue.  And so I want to address that briefly.

14 The regulations refer to photography in (a) and (b) for non-

15 commercial and commercial purposes and allow photography in those

16 situations only with either the oral or written permission

17 depending on whether you're under (a) or (b).  Defendant claims

18 that he falls under category (c).  Although no evidence was

19 offered, it seemed to be clear based on what the Defendant said

20 on the videotaping that he did not have oral or written

21 permission to film inside the SSA.  The parties really didn't

22 address in detail what the meaning of commercial and non-

23 commercial purposes were under (a) and (b).  And while it's not

24 dispositive, I think that if you look at the Operation Readiness

25 order that was submitted by Mr. Stamps, it gives examples of what

1   the GSA and the regulators intended when they put this regulation

2   together.  And under (a), they talk about examples of non-

3   commercial photography for which verbal permission would be

4   sufficient would be examples of one of the agencies as having a

5   promotional ceremony and someone wants to take pictures of the

6   promotional ceremony, or students coming in wanting to take some

7   kind of photographs for a school project.  Clearly, I don't think

8   that Mr. Stamps falls under that kind of definition in terms of

9   non-commercial purpose.  (b) talks about commercial purposes and

10  they would give examples of a professional photographer or

11  someone who wants to come in and take architectural detail

12  photos, actual movie studios that would want to film and would

13  need written permission.  And again, it doesn't seem that Mr.

14  Stamps really falls under that category either.

15       With respect to (c) in which Defendant argues that he

16  falls under, neither of the parties have really addressed the

17  issue of whether a person can just announce I'm coming in to take

18  photos for news purposes and come under section (c).  However, I

19  think for purposes of the ruling today, the Court can just assume

20  that for purposes of our situation that he falls somehow under

21  subsection (c).  So, the issue then becomes whether the Defendant

22  violated the regulation that he could come in and photograph the

23  entrance, lobby, foyers, corridors, or auditoriums for news

24  purposes.  And the Court has reviewed the videotape, as I've

25  mentioned several, several times.  And it's clear that the

6

1  Defendant was allowed and was able to film the entrance, the
2  foyer, and lobby areas where people were sitting.  But in
3  addition, the Court [sic] filmed private individuals coming and
4  going from the building.  Defendant filmed the security guard
5  that worked behind his desk.  And that included filming material
6  the guard pulled out of his desk to work on or review.  And in
7  addition, the Defendant is repeatedly -- you can repeatedly see
8  him filming individuals seeking services at Office Number 1 which
9  was directly inside the door of the foyer area.  I would also
10 note that when the Defendant explained the reasons that he was
11 coming in to film at the SSA, he stated -- this is kind of a
12 paraphrase and not an exact quote -- but he stated that he had
13 heard over the summer through other videos how horrible employees
14 at the SSA were acting in various offices and he was here to take
15 a look.  It's clear he was not there to film the entrance, the
16 lobbies or the foyer, which he was allowed to do.  But he was
17 there to film employees of the Social Security Administration in
18 their interactions with individuals who were seeking services of
19 the Social Security Administration.  This is not permitted under
20 the rules and the Court finds the Defendant did film areas of the
21 Social Security Offices beyond what is permitted by the
22 regulation at issue even if he were to qualify a someone who was
23 filming for news purposes.  It's clear that he didn't have
24 permission.  So, certainly. he cannot attempt to justify his
25 filming under subparts (a) or (b).

1          Thus, I do conclude that the Defendant violated the

2     regulation at issue.  And because the Defendant has raised

3     constitutional issues, I will try to briefly address those.

4          Defendant, in his briefing, correctly identified that

5     when you are making a First Amendment claim, you look at the type

6     of the forum involved.  And Defendant sets out those forums being

7     public, designated public and non-public forums.  However, the

8     Defendant incorrectly claims that the SSA is a designated public

9     forum.  And just briefly, a public forum is one that's generally

10     available to the public for public expression, parks, streets,

11     roadways, public thoroughfares.  A designated public forum is one

12     in which the government opens a traditional non-public forum to

13     public discourse, say, a concert hall for concerts, speakers,

14     that type of thing.  And a non-public forum is a government

15     property not classified as a traditional public forum or

16     designated public forum.  And in a non-public forum, primarily a

17     work office, the government may restrict speech and expressive

18     activity as long as the restrictions are reasonable and not an

19     effort to suppress expression merely because the public official

20     opposes the speaker's point of view.  In a non-public forum, the

21     government has significant latitude to regulate expressive

22     activity.  The restriction only has to be reasonable.  And in

23     determining reasonableness, the Court looks, in part, at the

24     traditional use of the property.  Here, we're talking about

25     property that's an office to be used for those applying for or

8

1  needing assistance with one of several Social Security programs.

2  There is no evidence, contrary to Defendant's assertion, that the

3  office has ever been opened up for public expression or

4  discourse.  And in his video, Defendant offers the opinion that

5  any government office is a public area to which any member of the

6  public may enter at will to photograph.  This is just an

7  incorrect statement of the law.

8       Finding that the Social Security Office was a non-public

9  forum, the Court next considers whether the regulation Defendant

10 is accused of violation was reasonable.  In determining

11 reasonableness, the Court may rely on evidence or commonsense

12 inferences.  No evidence was offered on the issue of

13 reasonableness, so the Court will rely on just commonsense

14 inferences based on the evidence before it.  This is a busy

15 office, as seen on Defendant's own videotape with numerous people

16 coming and going whose entry and exit was blocked at times by the

17 Defendant's filming.  Given the volume of traffic, a security

18 guard was stationed near the door to offer assistance and to make

19 sure no one entering had weapons.  That large numbers of people

20 were coming and going is also reflected on the sign Defendant

21 videoed indicating that on that day the wait time for people

22 entering the building was going to be two hours.  Thus, a

23 regulation limiting those -- the purposes for which those not

24 seeking services may enter and photograph I think is reasonable

25 to control this type of busy work environment.

9

1       So, for all of those reasons, the Court does find that

2  the Defendant violated the regulation and that his First

3  Amendment claims are not valid in this case.  There was no

4  violation of the First Amendment in telling him he couldn't come

5  in to film the interactions between those seeking services and

6  the employees of Social Security.

7       At this time then, in a petty offense case, we move on

8  to sentencing.  And Defendant certainly has the opportunity, as

9  well as his lawyer, to have a right to be heard, to present

10 evidence, or to make any other comments they want prior to

11 sentencing.  So, on behalf of the Defendant, anything you or the

12 Defendant want to say for the record?

13      MR. MOORE:  No, Your Honor.

14      THE COURT:  All right.  Anything the Defendant wants to

15 say?

16      MR. STAMPS:  No, Your Honor.

17      THE COURT:  All right.  On behalf of the Government?

18      MR. HEBERLE:  Nothing further, Your Honor.

19      THE COURT:  All right.  Well, just let me ask you this.

20 At one time the Government had made a recommendation, I believe,

21 on sentencing issues.

22      MR. HEBERLE:  Yes.

23      THE COURT:  And is that still your recommendation?

24      MR. HEBERLE:  It is, Your Honor.  And that

25 recommendation was a $120 fine to include an $85 -- excuse me.

10

$120 total including an $85 fine, $30 process fee, and a $5 special assessment.

THE COURT:  And what is the range of punishment for this particular offense?

MR. HEBERLE:  Your Honor, I believe we went over that prior to the trial.  Unfortunately, I don't have that in front of me right now.  I believe this is a Class B misdemeanor, which would include a range of punishment of up to six months imprisonment and I believe up to a $5,000 fine.

THE COURT:  Yeah.  That was my understanding of the range of penalty.  On behalf of Mr. Stamps, anything you want to say about this penalty range?

MR. STAMPS:  No, Your Honor.

THE COURT:  All right.  And really I was asking your attorney.

MR. STAMPS:  Oh, I apologize.

THE COURT:  Anything you want to argue about the appropriate penalty?  Government is arguing $120.  I just have to say, you know, from the Court's standpoint, I think I can look at a number of factors.  And, you know, he disrupted activity that day.  Police were called.  We had at least, you know, four officers out there.  And so, the $120 seems pretty minimal to the Court in light of the incidents in question.

MR. MOORE:  I agree, Your Honor.  However, we plan on taking this to appeal.

11

1          THE COURT:  You do?

2          MR. MOORE:  Yes.

3          THE COURT:  All right.  Well, in that case, although the

4     Government has recommended the $120 fine, I think that that's way

5     too low given everything that was involved in this case on the

6     day of the incident in question.  And so I'm opposing -- imposing

7     a $500 fine on the Defendant.  That will include the $30

8     processing fee and the $5 special assessment, and then the

9     remainder to be the fine.  Anything else that the Court needs to

10    address?

11         MR. HEBERLE:  Not on behalf of the Government, Your

12    Honor.

13         MR. MOORE:  Not on behalf of Defendant, Your Honor.

14         THE COURT:  All right.  We'll be in recess.

15         (Court in Recess from 11:20 a.m. until 11:21 a.m.)

16         THE COURT:  And obviously, since you're represented by

17    counsel, Mr. Stamps, you're well aware of this.  But I did want

18    to just remind you, you do have the right to appeal, but you

19    would need to do that within 14 days.  All right.  With that

20    additional reminder on the record, we will be in recess.

21              (Court Adjourned at 11:21 a.m.)

22

23

24

25

1

2

3

4

5

6          I certify that the foregoing is a correct transcript
   from the electronic sound recording of the proceeding in the
7   above-entitled matter.

8

9          /s/ Lissa C. Whittaker          July 25, 2023
           Signature of transcriber          Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25