UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                Case No. 6:23-mj-2348-JSS-UAM

GEORGE DOUGLAS METZ

## UNITED STATES' BRIEF IN RESPONSE TO
## APPELLANT GEORGE DOUGLAS METZ'S INTIAL BRIEF

In accordance with the Court's scheduling order (Docs. 92, 113), the United States files this response brief to Appellant George Douglas Metz's Initial Brief (Doc. 108) challenging his conviction and sentence in this petty offense case. For the reasons discussed below, the Court should reject Metz's arguments and affirm the judgment and sentence of the Magistrate Judge.

### Statement Regarding Oral Argument

The United States does not request oral argument.

## Table of Contents

Statement Regarding Oral Argument ........................................................................ 1

Table of Contents ..................................................................................................... 2

Table of Authorities ................................................................................................. 3

Statement of Jurisdiction ......................................................................................... 4

Statement of the Issues ............................................................................................ 4

Statement of the Case .............................................................................................. 4

      *Course of Proceedings* ................................................................................... 4

      *Statement of the Facts* ................................................................................... 5

      *Scope of Review and Standard of Review* .................................................... 9

Summary of the Argument ......................................................................................11

Argument and Citations of Authority......................................................................11

Conclusion ..............................................................................................................17

Certificate of Service

# Table of Authorities

*Ball v. United States*, 470 U.S. 856, 864 (1985).................................................................. 17

*Blockburger v. United States*, 284 U.S. 299, 304 (1932)............................................11, 15, 16

*Illinois v. Vitale*, 447 U.S. 410, 416 (1980)........................................................................ 15

*United States v. Bobb*, 577 F.3d 1366, 1371-72 (11th Cir. 2009).................... 10, 14, 15, 17

*United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) ...................................10, 14

*United States v. Cordova*, No. 1:23-cr-453-NYW-MEH, at Doc. 60 (D. Colo. Oct. 15, 2024) ............................................................................................................................14, 16

*United States v. Cotton*, 535 U.S. 625, 631 (2002)............................................................. 10

*United States v. Dawson*, 64 F. 4th 1227, 1237 (11th Cir. 2023).......................................... 13

*United States v. Granville*, 716 F.2d 819, 821 (11th Cir. 1983), *aff'd on rehearing*, 736 F.2d 1480 (11th Cir. 1984) ............................................................................................. 11, 17

*United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013) ........................................10, 14

*United States v. Tampas*, 493 F.3d 1291, 1297-98 (11th Cir. 2007).............................. 10, 14

*Yates v. United States*, 574 U.S. 528, 543 (2015) ....................................................... 13

18 U.S.C. § 3401.................................................................................................................4

18 U.S.C. § 3402.................................................................................................................4

18 U.S.C. § 3742(h).............................................................................................................4

28 U.S.C. § 636(a)...............................................................................................................4

41 C.F.R. § 102-74.385 ...........................................................................4, 5, 6, 7, 11, 15, 16, 17

41 C.F.R. § 102-74.420 ...............................................................4, 5, 6, 11, 12, 14, 15, 16, 17

Fed. R. Crim. P. 58 ......................................................................................................... 4, 10

## Statement of Jurisdiction

This is an appeal from the Magistrate Judge's judgment and sentence in a petty offense criminal case. The Magistrate Judge had jurisdiction over the case. *See* 18 U.S.C. § 3401; 28 U.S.C. § 636(a); Fed. R. Crim. P. 58. The Magistrate Judge entered judgment against George Douglas Metz ("Metz") on December 20, 2024 (Doc. 85), and Metz timely filed a notice of appeal on January 3, 2025 (Doc. 89). *See* Fed. R. Crim. P. 58(g)(2)(B). The District Judge has jurisdiction over this appeal. *See* 18 U.S.C. §§ 3402 and 3742(h); *id.*

## Statement of the Issues

I. Whether sufficient evidence supports the Magistrate Judge's findings that Metz violated 41 C.F.R. § 102-74.420 as charged in Counts Four, Six, and Eight.

II. Whether it was plain error for the Magistrate Judge to convict Metz of violating both 41 C.F.R. §§ 102-74.385 and 102-74.420 for each occasion in which he filmed inside a Social Security office.

## Statement of the Case

### *Course of Proceedings*

Metz was charged, along with codefendant Joshua Joseph Gray, in an eight-count information filed on November 28, 2023 (Doc. 1). Counts Three through Eight apply to Metz. Counts Three, Five, and Seven charge him failing to comply with official signs and the lawful direction of authorized individuals, in violation of 41

C.F.R. § 102-74.385. Counts Four, Six, and Eight charge him with unlawful taking photos/videos, in violation of 41 C.F.R. § 102-74.420. Following a two-day bench trial on May 16-17, 2024 (Docs. 51-52), Magistrate Judge Embry J. Kidd found Metz guilty of all counts in a judgment issued December 20, 2024 (Doc. 85). Magistrate Judge Kidd sentenced Metz to six months' probation and a $3,000 fine, the latter of which he stayed on Metz's motion pending appeal (Docs. 85, 103).[1] Metz filed his notice of appeal on January 3, 2025 (Doc. 89).

### *Statement of the Facts*

Social Security field offices are brick-and-mortar building where individuals go for face-to-face service from Social Security Administration (SSA) representatives regarding a variety of retirement, disability, and needs-based benefit programs, as well as Social Security numbers and cards (Transcript Vol. I "Tr." 9-11). This business involves the exchange and discussion of large amounts of sensitive personally identifiable information (PII), such as names, Social Security numbers, dates of birth, addresses, medical records, marriage certificates, and divorce decrees (Tr. 12-14, 25-29). This exchange happens at the check-in kiosk when customers first arrive at the office, at the customer service windows where they receive service and conduct business, and at the "drop box" area where they can fill out and drop off

---

[1] The Magistrate Judge accepted the government's recommendation of a $3,000 fine, which the government explained was calculated as *$1,000 per incident* (Doc. 103 at 25, 33), though the Magistrate Judge also noted that it amounted to $500 per count (*Id.* at 55). The Magistrate Judge also noted he had been inclined to impose a higher fine but deferred to the government's lower proposal (*Id.* at 55).

paperwork (Tr. 12-13, 26-27). Filming in these locations risks the recording and dissemination of this sensitive PII and has a predictably chilling effect on members of the public seeking service they may need at these field offices (Government Exhibit "GE" 5a at 4:53-4:55, 18:20, 22:00; Tr. 111, 114).

On three occasions in January 2023, Metz entered three different Social Security field offices located in the Middle District of Florida while videorecording. Each of these offices was a federal space leased by the General Services Administration (GSA), and occupied solely by the SSA, a federal agency (Tr. 15-16, 148-51). Metz did not have the permission of SSA or an authorized official of SSA to videorecord in any of these spaces (Tr. 39-40, GE 3 at 1:28-143; GE 5a at 2:31-2:44, 4:35-4:49, 18:40-19:49; GE 9).

The first instance occurred on or about January 6, 2023, at the Ocala Social Security office (Counts Three and Four) (Tr. 178). Metz entered the office while videorecording, continued to film as he walked around the office, and then paused and filmed a sign stating: "Federal law and SSA policy prohibits taking pictures or video inside SSA offices without the expressed written consent of an authorized official of the agency" (GE 9 at 2:22-2:35). Metz then focused his camera on signage containing "Rules and Regulations Governing Conduct on Federal Property," which contain the full text of the 41 C.F.R. Part 102-74, Subpart C regulations, including 41 C.F.R. §§ 102-74.385 and 102-74.420 (*Id.* at 2:37-2:40; Tr. 179-80). After viewing this signage, Metz continued to videorecord within

6

the office for another two minutes before leaving (GE 9). While in the office, Metz videorecorded customers seated in the waiting area (including a child); customers receiving service at service window "A," including an audible conversation between customers and an SSA employee; customers entering the office; the Protective Services Officer (PSO); and the PSO's desk, including a CCTV security footage monitor (GE 9 at 0:56-0:59; 1:56-2:09; 2:13-2:18; 3:36-3:42; 3:44-3:56, 3:59-4:22; Tr. 180). Metz posted this videorecording on his YouTube channel, where he received advertisement income and solicited donations (Tr.178, 181, 184, 195-96; GE 13a-13c; GE 15 at 16, 24-26, 31, 33, 38-40).

The second instance occurred on January 26, 2023, at the Kissimmee Social Security office (Counts Five and Six) (Tr. 162-64). Metz and Gray both entered the office while filming (GE 3 at 0:23-0:25, 1:20). They were confronted by a PSO who informed them they could not record inside the office; only in the vestibule before the door entering the office (*Id.* at 1:28-1:47).[2] The PSO also directed them to signage in the vestibule confirming that photography and videorecording was prohibited in the office (*Id.* at 2:11-2:15, 11:35-13:22). Despite these directives, Metz and Gray continued to record inside the Social Security office (*Id.* at 3:18-3:20; 4:42-11:48). They videorecorded customers seated in the waiting area, a customer receiving service at service window "A" and carrying paperwork after leaving the window; the

---

[2] It is undisputed that PSOs are other authorized individuals" as that term is defined under section 102-74.385 (Tr. 148, 164).

drop box area; and the PSO and his workstation (GE 3 at 0:29-14:20; Tr. 165, 168).

The third instance occurred on January 30, 2023, at the Orlando Social Security office (Counts Seven and Eight) (Tr. 167-69). Again, both Metz and Gray entered the office while filming (GE 5a at 0:01-0:23, 0:34, 1:30). A PSO confronted them and informed them they could not record in the office without permission (*Id.* at 0:23-0:31, 2:31-2:44, 4:35-4:49). The PSO also directed them to the posted GSA Rules and Regulations and official signage prohibiting photography and videorecording without written consent of an authorized SSA official (*Id.* at 3:07-3:44; Tr. 29-30). Both Gray and Metz continued to record in the office, capturing customers checking in, completing paperwork, waiting for service, and receiving service; SSA employees and PSOs; and the PSO desk including monitors displaying security camera footage of the interior and exterior of the office (GE 5a-b; Tr. 23). These monitors displayed sensitive security information, including private interview rooms, back-office spaces, and security blind spots (GE 5a at 7:28-9:48; 16:23-16:42; Tr. 24, 109). Metz and Gray recorded in front of "Please do not stand here" signs next to the kiosk and drop box station areas, which agency witnesses testified were posted to protect the privacy of customers using those areas (GE 5a at 2:04, 16:58; GE 5b at 9:24; Tr. 15, 110-11). They captured customers checking in at the kiosk (GE 5a at 2:17-2:34, 12:35-12:42, 16:45-18:36, GE 5b at 4:22-6:49), as well as customers carrying and completing paperwork at the drop box area (GE 5a 21:09-21:52; 5b at 2:03-2:48, 5:08-5:19).

At one point, Metz lifted his video-camera over partitions separating the SSA

field office from the SSA card center (where individuals apply for and obtain Social Security cards) and recorded a customer receiving service at the card center (GE 5a at 10:55-11:57; Tr. 36-37). He continued recording this despite a PSO telling him to stop because of the private information being disclosed (*Id.* at 11:37-11:57; Tr. 102). After several minutes, the SSA Assistant District Manager for the Orlando field office, Luis Flores, came out and told Gray and Metz that they could not film in the office because they did not have permission to do so (GE 5a at 18:40-19:49). Despite Mr. Flores' directive, both continued to film (*Id.* at 19:45-19:49). They also disregarded Mr. Flores' subsequent requests that they leave the office, continuing to film for another twenty minutes (GE 5a 19:49-30:07; GE 5b 0:01-9:51).

Before he entered any of the Social Security offices in January 2023, Metz was already aware of the rules governing photography and videorecording in Social Security offices. Metz had previously videorecorded at the Tampa Social Security office in 2019 (GE 7a-7c; Tr. 169, 173). At that time, he was advised by signage, a PSO, and an FPS inspector that he could not record inside a Social Security office without prior written approval (GE 7b at 2:52-3:44; GE 7c at 0:01-2:00, 3:52-4:04; Tr. 174-75, 177-78). Metz acknowledged that he understood the prohibition and stopped filming inside the office (GE 7b at 12:41-13:00, 16:34-16:39).

### *Scope of Review and Standard of Review*

The scope of appeal of a magistrate judge's judgment of conviction and sentence in a misdemeanor or petty offense case is "the same as in an appeal to the

9

court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

With respect to issue One, the question of whether the evidence is sufficient to sustain a defendant's conviction is a question of law which is reviewed de novo. *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013). The Court must review the evidence in the light most favorable to the government and draw all reasonable inferences and credibility choices in favor of the verdict. *See id.; United States v. Tampas*, 493 F.3d 1291, 1297-98 (11th Cir. 2007); *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000). The Court must affirm the conviction "unless there is no reasonable construction of the evidence from which the [factfinder] could have found the defendant guilty beyond a reasonable doubt." *Joseph*, 709 F.3d at 1093.

With respect to Issue Two, Metz did not raise his double jeopardy argument before the Magistrate Judge. Accordingly, the standard of review is plain error. *See United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009) (applying plain error review where defendant failed to raise double jeopardy argument before the district court); Under the plain error standard, the Court should affirm the Magistrate Judge's judgment unless: (1) there was an error in the proceedings; (2) the error was plain; and (3) the error affected the defendant's substantial rights. *See Bobb*, 577 F.3d at 1371. "If these conditions are met, [the Court] may exercise [its] discretion and vacate the conviction if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 631 (2002). "To constitute [plain error],… the deficiency must be obvious and

substantial, affecting the fairness or integrity of the trial." *United States v. Granville*, 716 F.2d 819, 821 (11th Cir. 1983), *aff'd on rehearing*, 736 F.2d 1480 (11th Cir. 1984).

## Summary of the Argument

At trial, the government elicited sufficient evidence to prove beyond a reasonable doubt that Metz had failed to comply with official signs and/or lawful directions of authorized individuals, in violation of section 102-74.385, as charged in Counts Three, Five, and Seven, and that he had filmed in violation of section 102-74.420, as charged in Counts Four, Six, and Eight. These charges are not multiplicitous under the *Blockburger* test because there are elements of each offense that require proof of different facts. Accordingly, the Court should reject Metz's request to dismiss any of the counts of conviction and should affirm the Magistrate Judge's Judgment and Sentence.

## Argument and Citations of Authority

**I.    Sufficient evidence supports the Magistrate Judge's findings that Metz violated 41 C.F.R. § 102-74.420.**

Section 102-74.420 states:

Except where security regulations, rules, orders or directives apply or a Federal Court order or rule prohibits it, persons entering in or on Federal property may take photographs[3] of—

(a)    Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;

(b)    Space occupied by a tenant agency for commercial purposes only

---

[3] The Magistrate Judge found that the use of "photographs" in section 102-74.420 includes "videos," and this is not dispute.

11

>> with written permission of an authorized official of the occupying agency concerned; and
>
> (c) Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

Accordingly, as the Magistrate Judge found, an individual can violate section 102-74.420 in four ways (Doc. 77 at 7-8). First, if they videorecord in contravention of a security regulation, rule, or, or directive, as set forth in the introductory sentence of section 102-74.420. Second, if they videorecord a space occupied by a tenant agency for non-commercial purposes without the permission of the occupying agency, as set forth in subparagraph (a). Third, if they videorecord a space occupied by a tenant agency for commercial purposes without the written permission of am authorized official of the occupying agency, as set forth in subparagraph (b). Or fourth, if they videorecord building entrances, lobbies, foyers, corridors, or auditoriums for other than news purposes.

Here, the Magistrate Judge found that Metz violated section 102-74.420 because he videorecorded in a space occupied by a tenant agency, the Social Security Administration (SSA), without the permission of the occupying agency (SSA) or an authorized official of the occupying agency, in violation of subsections (a) and (b)—the second and third categories of violation, as discuss above (Doc. 77 at 12, 14, 16; Doc. 103 at 13, 16, 19).[4] In making these findings, the Magistrate Judge relied on

---

[4] As the Magistrate Judge explained, he did not need to make a finding as to whether the recording was done for non-commercial or commercial purposes because Metz had not received permission of any kind from SSA (Doc. 77 at 10 n.1).

sufficient evidence elicited at trial, including the video-recordings themselves and the testimony of PSOs, an FPS Inspector, and an SSA Assistant District Manager (Doc. 77 at 10-16; Doc. 103 at 12-19).

Metz does not challenge the sufficiency of the evidence as it relates to the Magistrate Judge's determination that he did not have the permission of SSA or an authorized official thereof to videorecord (Doc. 108). Although he asserts that he recorded only in a building "lobby" pursuant to subparagraph (c) (*Id.* at 14-15), the Magistrate Judge supportably and appropriately found that the space Metz recorded was a space occupied by a tenant agency, covered by subparagraphs (a) and (b) (Doc. 77 at 6, 12, 14, 16; Doc. 103 at 7, 13, 16, 19). Indeed, FPS Inspector Mohammad testified that the SSA offices where Metz recorded were all offices occupied solely by the SSA. He contrasted standalone spaces that are occupied solely by one federal agency, like the offices in this case, with Federal buildings that house multiple agencies with open generalized spaces like, building foyers, lobbies, corridors, auditoriums, and cafeterias (Tr. 149-50, 202; Transcript Volume II "Tr. II" 14, 16-17). This distinction is supported by the canon *of noscitur a sociis*, which provides that "word is known by the company it keeps." *United States v. Dawson*, 64 F. 4th 1227, 1237 (11th Cir. 2023) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)). Indeed, each location in subsection (c)— "building entrances, lobbies, foyers, corridors, [and] auditoriums"—refers to a location in which the public congregates but does not engage in individual, personal transactions. This is different from the SSA offices in this case, which is where SSA conducts its primary business of

13

assisting members of the public. (Tr. 149-50, 202; Tr. II 14, 16-17). *See United States v. Cordova*, No. 1:23-cr-453-NYW-MEH, 2024 WL 4494300, at *4-5 (D. Colo. Oct. 15, 2024) (upholding a conviction under section 102-74.420 where a defendant recorded inside a similar SSA office space). Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the verdict, the Court should affirm Metz's convictions of Counts Four, Six, and Eight. *See Joseph*, 709 F.3d at 1093; *Tampas*, 493 F.3d at 1297-98; *Cooper*, 203 F.3d at 1285.

Metz's primary argument is that there was insufficient evidence for a finding that there was a security regulation, rule, order, or directive in place, as set forth in the introductory sentence of section 102-74.420 (Doc. 108 at 11-14). Because of sufficient evidence supports the Magistrate Judge's findings with respect to subparagraphs (a) and (b), there is no need for the Court to reach this issue. In other words, because the Magistrate Judge found Metz had videorecorded in a space occupied by a tenant agency without that agency's permission, he was guilty of violating 41 C.F.R. § 102-74.420, regardless of whether SSA had a security regulation, rule, order, or directive prohibiting videorecording.

## II.   Metz's convictions under both regulations do not violate double jeopardy.

Relevant here, the Fifth Amendment's Double Jeopardy Clause guarantees against multiple punishments for the same offense. *Bobb*, 577 F.3d at 1371. "[W]here two statutory [or regulatory] provisions proscribe the same offense and there is no

14

clear indication that the legislature intended multiple punishments for the offense, the Double Jeopardy Clause's prohibition against multiple punishments protects a defendant from being convicted under both provisions." *Id.* at 1371-72. The test for evaluating such claims is the Supreme Court's *Blockburger* test: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Our analysis focuses on the proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial." *Bobb*, 577 F.3d at 1372 (citing *Illinois v. Vitale*, 447 U.S. 410, 416 (1980)).

The elements of 41 C.F.R. § 102-74.385 are:

(1) The defendant was in or on Federal property; and

(2) The defendant knowingly failed to comply with official signs of a prohibitory, regulatory, or directory nature, or with the lawful direction of Federal police officers or other authorized individuals.

The elements of 41 C.F.R. § 102-74.420 are:

(1) The defendant was in or on Federal property;

(2) The defendant took one or more photographs; and

(3) Such photograph(s) was (were) prohibited by security regulations, rules, orders, or directives, or by a Federal court order or rule, or such photograph(s) was (were) of a space occupied by a tenant agency for non-commercial purposes without the permission of the

15

>> occupying agency, or such photograph(s) was (were) of a space occupied by a tenant agency for commercial purposes without the written permission of an authorized official of the occupying agency.

This case passes the *Blockburger* test because the elements of each offense plainly require different proof. In relevant part, section 102-74.385 requires evidence that a defendant knowingly failed to comply with official signs or lawful direction of authorized individuals. By contrast, section 102-74.420 requires proof the defendant took photos or video in contravention of a security rule or in a space occupied by a tenant agency without the agency's permission, which is what the Magistrate Judge found here. Section 102-74.420 does not require proof that the defendant failed to comply with an official sign or the lawful direction of authorized individuals, as required in section 102-74.385. Although the *Blockburger* test does not depend on the actual evidence elicited at trial, the facts of this case highlight the distinction. Metz violated section 102-74.420 by videorecording in the Social Security offices without permission from SSA. He violated section 102.74.385 by refusing to stop recording despite being directed to do so by official signage and lawful direction of authorized individuals.

As noted above, the instant case is not the only instance of a defendant being convicted of both section 102-74.385 and section 102-74.420 for an instance of videorecording in a Social Security office. *Cordova*, 2024 WL 4494300. Metz has failed to identify a deficiency in the Magistrate Judge's judgment convicting him of violating both regulations, let alone a deficiency that is "obvious and substantial."

*See Granville*, 716 F.2d at 821. Accordingly, his argument must fail under the plain error standard.[5]

## Conclusion

The United States requests that the Court affirm the judgment and sentence of the Magistrate Judge.

                                 Respectfully submitted,

                                 GREGORY W. KEHOE
                                 United States Attorney

By:  *s/ Matthew J. Del Mastro*
      MATTHEW J. DEL MASTRO
      Special Assistant U.S. Attorney
      USAO No. 203
      400 W. Washington St., Suite 3100
      Orlando, FL 32801
      (407) 648-7500
      matthew.del.mastro@usdoj.gov

---

[5] If the Court were to find a double jeopardy violation, the appropriate remedy would not be to vacate or dismiss *all* the charges, as Metz requests (Doc. 108 at 20). The "only remedy consistent with the congressional intent is for the district court, where the sentencing responsibility resides, to exercise its discretion to vacate *one* of the underlying convictions." *Bobb*, 577 F.3d at 1372 (quoting *Ball v. United States*, 470 U.S. 856, 864 (1985)). Thus, if the Court agreed with Metz's sufficiency of the evidence argument with respect to the section 102-74.420 convictions, the appropriate remedy would be to vacate those counts and affirm the section 102-74.385 convictions.

U.S. v. Metz                               Case No. 6:25-mj-02348-JSS-UAM

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Sonthonax B. SaintGermain, Esq.
Counsel for George Douglas Metz

*s/ Matthew J. Del Mastro*
MATTHEW J. DEL MASTRO
Special Assistant U.S. Attorney
USAO No. 203
400 W. Washington St., Suite 3100
Orlando, FL 32801
(407) 648-7500
matthew.del.mastro@usdoj.gov